FILED

2009 Jul-20  PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CLAUDETTE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-G-1709-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Claudette Jones, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Jerry M. Lang determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "status post neoplasm with mastectomy of the right breast and a mood disorder" are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 20].  The ALJ found that the plaintiff retains the "residual functional capacity to perform sedentary work which allows for the ability to maintain concentration for two hours without a break; casual contact with the general public, co-workers, and supervisors; and changes to be introduced gradually in the work setting."  [R. 21].   Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6ᵗʰ Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in

significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the

articulated reasons for rejecting the plaintiff's pain testimony are not supported by

substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.

The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims."  Id.  If the VE is asked whether the claimant could

perform other jobs if his testimony of pain or other subjective symptoms is accepted as

true, the case might be in a posture that would avoid the necessity of a remand.  As

Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was

properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

In 2002, the plaintiff was diagnosed with carcinoma of the right breast, and

on December 17, 2002, underwent a right modified radical mastectomy.  [R .172].

Although the plaintiff claims that she is disabled because of residual pain in her right

arm, the ALJ quickly disposed of the plaintiff's pain allegations:

> The claimant's testimony that she was extremely limited in the use of her
> right arm to such an extent that she could not pick up an object heavier than
> a Kleenex is not supported by the objective medical evidence.  Although
> the claimant reported right arm pain to her treating physician, the objective
> medical evidence has only indicated mild to moderate pain.  There is also
> no evidence the claimant has complained that she has limited ability in the
> use of her right arm or that a physician prescribed limitations.

[R. 22].  However, the plaintiff also claims she is disabled because of a major depression

disorder, the ALJ at the hearing left the record open to receive treating mental health

6

records, because "the psychological component of this case is probably the most compelling aspect of it."  [R. 482].

On April 11, 2005, the Commissioner's consulting psychologist, June Nichols, Psy.D., evaluated the plaintiff.  [R. 197-200].  Dr. Nichols noted that the plaintiff's mood was severely dysphoric, her affect was flat, the plaintiff suffered from insomnia and frequent crying spells, her appetite and energy were decreased, and that the plaintiff was anhedonic.[1]  [R. 198].  As for the plaintiff's concentration and attention, Dr. Nichols reported that her "[s]peed of mental processing was slowed."  [Id.].  The plaintiff "reported suffering from approximately two panic attacks each week."  [R. 199].  As for the plaintiff's daily activities, Dr. Nichols noted, "She is not involved in enjoyable activities.  She has lost interest in reading.  She will attend church when she is able.  She is not involved in formal social clubs or organizations.  She has become quite isolated and withdrawn."  [R. Id.].  Dr. Nichols diagnosed major depressive disorder, recurrent, severe, without psychotic features, and panic disorder, with agoraphobia, and assessed her GAF at 50.  [Id.].  Dr. Nichols offered her prognosis:

> The medical evidence of records provided by Disability was reviewed and
> those findings were considered in the overall assessment of this patient.
> Ms. Jones suffers from Recurrent Depression, as well as Panic Disorder,
> with Agoraphobia.  Her ability to relate interpersonally and withstand the
> pressures of everyday work is severely impaired due to the nature of her
> depression and anxiety.  She does have deficits which would interfere with
> her ability to remember, understand and carry out work related instructions.
> She is able to live independently and handle her own funds with the

_____

[1]  Anhedonia is a "total loss of feeling of pleasure in acts that normally give pleasure."  Dorland's Illustrated Medical Dictionary 83 (28th Ed. 1994).

7

assistance of her mother and brother.  Ms. Jones is currently being
prescribed medication for anxiety and depression.  She is unable to afford
individual psychotherapy; therefore, the prognosis for improvement in her
condition within the next 12 months is poor.

[R. 200].

In December 2005, the plaintiff's treating physician, Jimmy A. Oguntuyo,

M.D.,[2] referred the plaintiff to Quality of Life Health Services, Inc., for evaluation and

treatment of depression.  On May 3, 2007, Susan Brunson, a licensed clinical social

worker, responded to a request for information regarding the mental health treatment of

the plaintiff.  [R. 412-415].  This information was submitted to the ALJ post-hearing.

[R. 411].  Ms. Brunson stated that she had first seen the plaintiff on December 9, 2005,

and at that time her symptoms included "despondency, poor sleep, chronic fatigue,

anxiety, crying frequently, low self-esteem, feelings of helplessness and hopelessness,

and social withdrawal."  [R. 412].  Ms. Brunson continued:

Ms. Jones was able to see me only every few months for therapy due to her
depression, reluctance to drive due to anxiety, her mother having surgery
and need help, and her difficulty leaving the house.  She had some
symptoms of Post Traumatic Stress Disorder due to the fears associated
with cancer, the surgery and ongoing pain, her sense of loss and feeling
unattractive and worthless, and from the trauma of her boyfriend who died
in a car accident in 1996.  In 2/06 she was very disturbed by the fact that
her pastor's son had committed suicide.

By 5/06 Dr. Oguntuyo had increased her Paxil to 30 mg, and added
Trazadone 25 mg to help her sleep.  She was sleeping better at that time.
She was helping her mother recover from surgery and having to do more
chores and responsibilities at home, which created significant stress on her.

_____

[2]  At the time of the referral, Dr. Oguntuyo had been prescribing Paxil 20 m.g. for
the plaintiff's depression.  [R. 412].

He depression was only slightly improved.  By 9/06 Ms. Jones had increased anxiety and worry about a return of the cancer.

The combined problems of recovery from breast cancer and depression and anxiety have made it improbable for this patient to return to work.  She has not been able to work full time for several years and in my professional opinion will not be able to return to work full time in the future.

[R. 412-413].

A Supplemental Questionnaire as to Residual Functional Capacity signed May 2, 2007, by Ms. Brunson and Dr. Oguntuyo indicates that the plaintiff has marked impairments in the following areas:  (1) activities of daily living; (2) maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in a work setting or elsewhere); and (4) ability to respond to customary work pressures.  [R. 414].  Ms. Brunson and Dr. Oguntuyo also opined that the plaintiff has marked impairments in a work setting:  (1) understanding, carrying out, and remembering instructions; (2) responding appropriately to supervision; (3) responding appropriately to co-workers; (4) performing simple tasks; and (5) performing repetitive tasks.  [R. 415].

The ALJ gave no weight to the opinion of the plaintiff's treating physician and therapist, and also gave no weight to the opinion of the Commissioner's own consultative examiner, concluding that their findings were inconsistent with the record. [R. 24].  Instead, the ALJ parroted the opinion of the State Agency medical consultant, who never examined the plaintiff. [R. 213]. The ALJ's conclusion is not supported by substantial evidence.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995).  In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner.  The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition.  . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression.  Severe depression is not the blues.  It is a mental illness;  and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.  The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight.  We do not say conclusive weight;  but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement.  He is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir.

1988).  . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand.  . . .

Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Lang has abused his discretion by substituting his own medical judgments for those of the plaintiff's treating and referring physician, Dr. Oguntuyo, therapist Brunson, and the Commissioner's own consulting psychologist, Dr. Nichols.  While rejecting these opinions, the ALJ recites the evaluation by a non-examining medical consultant to find the plaintiff has the residual functional capacity to perform sedentary work.  [R. 21].  This reliance is improper in this Circuit:

The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. <u>Spencer on Behalf of Spencer v. Heckler</u>, 765 F.2d 1090 (11th Cir.1985); <u>Strickland v. Harris</u>, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of

11

the treating physician. <u>Johns v. Bowen</u>, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir.1987).

<u>Lamb v. Bowen</u>  847 F.2d 698, 703 (11th Cir. 1988).  In this case, as in <u>Lamb</u>, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure."  <u>Id</u>.

At the hearing, the VE testified that given the ALJ's stated residual functional capacity for the plaintiff, she could perform the requirements of several sedentary jobs, such as assembler, inspector/check and hand packager.  [R. 486].  The ALJ's examination of the VE continued:

Q:    Okay.  Consider the same individual, although in this case give credit to the claimant's testimony regarding how her, primarily her depression to a lesser extent her pain, as I interpret the testimony, impact her activities of daily living.  Is that a road [sic] to preclude the jobs basically that you described?

A.    Well, from what I could hear of the testimony, the pain and the fact of the depression would preclude ability to deal with the public or get out of the house, so that would preclude one's ability to maintain the work actually attended, which would be necessary for any competitive employment.

[R. 486-487].  The examination of the VE continued with questions from the plaintiff's attorney:

Q:    Let's go back to the jobs that you identified in response to the first hypothetical, which of these jobs, if any, could be performed with one hand only, and that would be the non-dominant hand?

A:    All of these jobs would require the use of both hands.

Q:     All right.  Thank you.  And, let's assume for a minute that we've got some use in both of the hands, how much reaching would be involved?  And, I'm talking about reaching overhead, first of all.  And, then we'll do reaching forward and outwards.

A:     Well, for sedentary, there would not, there would not be a, any overhead requirement with these particular jobs.

Q:     All right.  And, then I imagine you'd be at a work station and the, the work that you'd, you'd have would be readily available.  But, would there be any reaching where you'd extend the, the whole arm reaching forward and outward?

A:     You'd have to have good use of the hands and the arms to do the sedentary unskilled work, to meet the production standards.

Q:     Right.  Thank you.  And, let's go to the opinion of record, I think it's fairly self explanatory, but the opinion by Dr. Nichols at B4F.  Did you have an opportunity to review that, by any chance?

A:     I did, but you'd have to refresh my recollection.

Q:     Sure.  I'll just cut, --

A:     I'd be happy to [INAUDIBLE].

Q:     I'll cut to the RFC part.  She said that her ability to relate interpersonally and withstand the pressures of everyday work is severely impaired due to the nature of her depression and anxiety.  She does have deficits which would interfere with her ability to remember, understand and carryout [sic] work related instructions.  She is unable to afford individual psychotherapy, therefore the prognosis within the next 12 months is poor.  So in terms of quantification, we, we have the social interaction and the work pressures that is characterized as severe.  Based on that information, would you have an opinion as to whether that would preclude the work you just outlined and any other work for that matter?

A:     I, I didn't understand the last – I can't hear you very well.

Q:      All right.  Let's go with severe impairment in the ability to relate
        interpersonally, that I would take to mean with supervisors and co-workers,
        as well as anybody else, --

A:      yes, ma'am, exactly.

Q:      – and severe impairment in the ability to withstand everyday work
        pressures.  Would those two limitations –

A:      That would preclude, that would preclude the work.  That's okay, I
        understand that.

[R. 487-489].

        The court concludes that substantial evidence does not support the ALJ's

decision not to credit and to ignore the opinions of the plaintiff's treating physician and

therapist, or that of the Commissioner's consulting psychologist.  Based upon these

opinions and the testimony of the VE, the Commissioner failed to carry his burden at step

five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is

disabled within the meaning of the Social Security Act.  An appropriate order remanding

the action with instructions that the plaintiff be awarded the benefits claimed will be

entered contemporaneously herewith.

        DONE and ORDERED 20 July 2009.


_____
    UNITED STATES DISTRICT JUDGE
            J. FOY GUIN, JR.

14